CJ-25-5052
Stinson

**IN THE DISTRICT COURT OF OKLAHOMA COUNTY**
**STATE OF OKLAHOMA**

FILED IN DISTRICT COURT
OKLAHOMA COUNTY

JUL 1 8 2025

RICK WARREN
COURT CLERK
88_____

DEBORAH KNOPP, an individual, )
)
Plaintiff, )
)
vs. ) Case No.
) Judge
)
EMANUEL TANKERSLEY, JR., an )
individual; and CSAA GENERAL )
INSURANCE COMPANY, a foreign for )
profit corporation, )
)
Defendant. )

CJ - 2025 - 5052

## PETITION

Plaintiff, Deborah Knopp, for her Petition against Defendants, alleges and states as follows:

### PARTIES, JURISDICTION AND VENUE

1. Plaintiff, Deborah Knopp, is and was at all relevant times, a citizen and resident of Oklahoma County, State of Oklahoma.

2. Defendant, Emanuel Tankersley, is and was at all relevant times, a citizen and resident of Oklahoma County, State of Oklahoma.

3. Defendant, CSAA General Insurance Company, is an Indiana corporation with its principal place of business in the State of California, doing business in the State of Oklahoma.

4. The acts, occurrences, and omissions complained of incurred in Oklahoma County, State of Oklahoma.

5. This Court has jurisdiction over this matter and venue is proper in Oklahoma County, State of Oklahoma.

### STATEMENT OF FACTS

6. Paragraphs 1 through 5 above are incorporated herein by reference.

EXHIBIT 2

7. On October 6, 2022 Plaintiff was driving her vehicle north on South Pennsylvania Avenue. As she proceeded through a green light, a vehicle driven by Defendant Tankersley on the Interstate-240 Service Road, ran a red light and collided with Plaintiff's vehicle causing Plaintiff to sustain serious injuries, including injuries to her neck, back, and both arms. Plaintiff was not at fault in causing the collision.

8. To date, Plaintiff's medical bills are in excess of Sixty-Four Thousand Dollars ($64,077.02) and, according to her neurosurgeon, it is anticipated that Plaintiff will need to undergo a future cervical surgery.

9. At the time of the accident at issue, Plaintiff was insured by Defendant CSAA General Insurance Company under Policy No. OKSS202703678, with an effective date of May 12, 2022 through November 12, 2023 ("Policy"). Said Policy included uninsured/underinsured motorist coverage in the amount of $100,000.00 per person/$300,000.00 per accident.

10. At the time of the aforementioned accident, Defendant Tankersley had allowed his liability insurance coverage to lapse and Defendant Tankersley was therefore an uninsured motorist.

11. Plaintiff gave notice of the accident to Defendant CSAA and made claim for her Medical Payment benefits under the Policy. The $10,000 Medical Payment limits of her Policy were paid and exhausted by February 17, 2023.

12. On August 21, 2024, Plaintiff made demand for the $100,000.00 per person Uninsured Motorist limits of Plaintiff's insurance Policy with Defendant CSAA. In connection with her demand for the $100,000 Policy limits of her Uninsured Motorist coverage, Plaintiff informed Defendant CSAA about the progression of her medical treatment for the injuries she had sustained in the accident; provided Defendant CSAA with the medical records and bills relating to

the accident; provided CSAA with information regarding the medical bills she had incurred from each medical provider who had treated her; and provided Defendant CSAA with an estimate of the wages (approximately $1,600) she had lost while she was off work due to the above-referenced collision.

13. On October 21, 2024, as requested, Plaintiff provided Defendant CSAA with a duly signed blanket medical authorization, along with a list of her medical care providers.

14. On January 30, 2025, having heard nothing, Plaintiff's prior counsel emailed Defendant CSAA requesting an evaluation of Plaintiff's claim within 10 days.

15. Still having heard nothing from Defendant CSAA, on March 4, 2025, Plaintiff's prior counsel again contacted Defendant CSAA regarding the status of the claim and again requested that CSAA promptly evaluate it.

16. Still having heard nothing from Defendant CSAA, on April 1, 2025 Plaintiff's prior counsel once again contacted CSAA and requested a status update on Plaintiff's claim.

17. On April 16, 2025, nearly five months after Defendant CSAA had been provided a blanket medical authorization and a list of Plaintiff's medical care providers, Defendant CSAA made a first offer in the amount of $64,428.99, which was only $351.97 over Plaintiff's medical bills. Defendant CSAA's initial offer letter did not include any explanation regarding how it had determined the amount of its offer.

18. On April 30, 2025, the CSAA adjuster handling Plaintiff's uninsured motorist claim informed prior counsel's office that "we have medical at $36,428.99. Which is $1,600 for lost wages, $2,337.76 after health care reductions and $32,491.23 after review for reasonable and customary charges. This amount is what we consider reasonable and customary for treatment incurred." There is no provision in Plaintiff's uninsured motorist coverage with Defendant CSAA

which allows it to unilaterally reduce the charges for medical bills that Plaintiff had actually incurred to an amount that Defendant CSAA considered to be "reasonable and customary."

## FIRST CLAIM FOR RELIEF - NEGLIGENCE

19. Defendant Emanuel Tankersley was driving his vehicle west on the I-240 service road when he negligently ran a red light at the intersection of South Pennsylvania and I-240 Service Road, thereby causing a collision with Plaintiff's vehicle, which was proceeding through the intersection on a green light.

20. As a result of the aforementioned collision, Plaintiff sustained serious injuries, including injuries to both arms, back and neck, experienced pain, suffering, emotional and mental distress, and has been damaged in an amount exceeding Seventy Five Thousand Dollars ($75,000) exclusive of interest and costs.

## SECOND CLAIM FOR RELIEF – BREACH OF CONTRACT

21. Paragraphs 1 through 20 above are incorporated herein by reference.

20. At the time of the above-referenced accident, Plaintiff Deborah Knopp was covered under an automobile insurance policy issued by Defendant CSAA which afforded her Uninsured Motorist benefits in the amount of $100,000 per person and $300,000 per accident.

21. At the time of the accident at issue, Defendant Tankersley had let his liability insurance coverage lapse and he was therefore an uninsured motorist under Oklahoma law.

22. Plaintiff timely gave notice of the accident and her Uninsured Motorist claim to Defendant CSAA.

23. Plaintiff cooperated with CSAA in its investigation of the accident, provided Defendant CSAA with an unrestricted medical authorization, a list of medical care providers, and

the medical bills she had incurred as a result of the accident, and complied with all conditions precedent to recovery under the Policy.

24. Plaintiff is legally entitled to recover damages from the uninsured motorist, Defendant Tankersley, in an amount exceeding the Underinsured Motorist Policy benefits.

25. Plaintiff was not at fault in causing the collision at issue. Rather, Defendant Tankersley was solely at fault for causing the collision.

26. Defendant CSAA breached the Policy by unilaterally reducing the medical bills Plaintiff had actually incurred to an amount that it considered "reasonable and necessary" without any authority under the Uninsured Motorist provision of the Policy allowing it to do so.

27. Defendant CSAA breached the Policy by failing to consider the cost of the future cervical surgery, of which it was aware, and which Plaintiff is reasonably certain to undergo.

28. Defendant CSAA breached the Policy by failing to pay Plaintiff's outstanding medical bills and lost wages.

29. Defendant CSAA breached the Policy by failing to pay Plaintiff the amount she is due and owed under the Uninsured Motorist provisions of the Policy.

30. As a direct result of Defendant CSAA's breach of the Policy, Plaintiff has suffered damages in excess of the sum of Seventy Five Thousand Dollars ($75,000) for past and future medical expenses, lost income, and physical and emotional pain and suffering.

### THIRD CLAIM FOR RELIEF – BREACH OF THE DUTY OF GOOD FAITH AND FAIR DEALING

31. Paragraphs 1 through 30 above are incorporated herein by reference.

32. Defendant CSAA had a duty to deal fairly and in good faith with Plaintiff in the handling of her first party claim for Uninsured Motorist benefits.

5

33. The duty of good faith and fair dealing requires Defendant CSAA to fully, fairly and timely investigate, evaluate and either pay or deny Plaintiff's Uninsured Motorist claim.

34. The duty of good faith and fair dealing prohibits Defendant CSAA from, among other things, low-balling and/or pre-judging Plaintiff's claim for Uninsured Motorist benefits.

35. Defendant CSAA breached its duty of good faith and fair dealing in its handling of Plaintiff's claim for Uninsured Motorist benefits. Among other things, Defendant breached its duty of good faith and fair dealing by failing to fully and fairly evaluate the claim. Instead, Defendant CSAA consciously and intentionally low-balled and pre-judged Plaintiff's Uninsured Motorist claim, improperly and without any Policy justification, reduced the amount of medical bills that Plaintiff had actually incurred to an amount it considered "reasonable and customary," and wholly failed to consider the cost of the future cervical surgery that here treating neurosurgeon has indicated she is reasonably like to incur.

36. Defendant's actions appear to have been undertaken as a matter of routing business practice, which would also be a breach of Defendant CSAA's duty of good faith and fair dealing.

37. Plaintiff has been damaged as a result of Defendant CSAA's bad faith acts and omissions.

38. The acts and omissions of Defendant CSAA were undertaken in reckless disregard of Plaintiff's rights under the Policy and/or Defendant CSAA acted intentionally and with malice with respect to Plaintiff's claim. Defendant CSAA should be punished for engaging in such behavior and an award of punitive damages against Defendant CSAA should be made to serve as an example to others who might engage in the same type of conduct.

WHEREFORE, Plaintiff requests actual damages in excess of the amount required for diversity jurisdiction pursuant to Section 1332 of Title 28 of the United States Code, punitive

damages, pre- and post-judgment interest, court costs, attorney fees, and any other and further relief that the Court deems just and proper.

**ATTORNEYS LIEN CLAIMED**
**JURY TRIAL DEMANDED**

Respectfully submitted,

_____
Thomas A. Paruolo, OBA #18442
Kenneth G. Cole, OBA #11792
DEWITT PARUOLO & MEEK, PLLC
P.O. Box 138800
Oklahoma City, Oklahoma 73113
Telephone:    405/705-3600
Facsimile:    405/705-2573
tom@46Legal.com
kcole@46Legal.com
**ATTORNEYS FOR PLAINTIFF**